UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SKYLINE PRODUCTS, INC.,

        Plaintiff,

v.

                                              Case No. 07-12855

POSEN CONSTRUCTION, INC.,          Honorable Julian Abele Cook, Jr.

        Defendant.

## ORDER

       This case involves allegations by the Plaintiff, Skyline Products, Inc. ("Skyline"), that the Defendant, Posen Construction, Inc. ("Posen"), breached the parties' sales contract and, in so doing, caused it to sustain damages. On August 20, 2008, Posen filed a motion for summary judgment which has been opposed by Skyline.

       For the reasons that have been stated below, Posen's application for dispositive relief will be granted.

I.

       Posen was hired as a general contractor by the Michigan Department of Transportation ("MDOT") in connection with a "large-scale ongoing highway construction project." As a part of this project, Posen obtained bids from subcontractors for electronic information signs which are

1

commercially known as "Dynamic Message Systems" ("DMS units").[1] On March 20, 2006, Posen issued a purchase order to, and agreed to order DMS units from, its manufacturer, Skyline. The following language appeared conspicuously in boldface and large type on Posen's one page purchase order:

> **SUBMIT APPROVAL DRAWINGS ASAP**
> **THIS ORDER IS CONTINGENT UPON STATE[2] APPROVAL OF SUBMITTAL DRAWINGS**
> . . .
> **MUST BE PER MDOT SPECIFICATIONS It is expressly understood that all labor & materials shall be in strict accordance with the owners [*sic*] plans and specifications**
> . . .
> **HOLD FOR RELEASE PENDING RECEIPT OF APPROVED DRAWINGS**
> . . . .

Thereafter, Skyline submitted two drawings for approval by MDOT under the original purchase order. However, MDOT rejected the first drawing and, in so doing it requested Skyline to resubmit its drawings. In October 2006, MDOT revised its design specifications for the DMS units. Skyline's second submission of drawings was also rejected by MDOT.[3] Skyline claims that it informed Posen during a meeting on November 2, 2006 that "long lead times require[] that construction on the signs would begin immediately."[4]

---

[1]DMS units permit operators to change a message on a highway sign remotely. For example, the operator of such a unit can program a sign that reads "Road Construction Ahead" to display, if circumstances permit, "Icy Conditions - Drive with Caution.'

[2]Throughout their pleadings, the parties used the terms "MDOT" and "state" interchangeably.

[3]Notwithstanding this rejection, Skyline claims that its second submission of drawings was in "substantial compliance" with MDOT's original specifications.

[4]Skyline quotes a passage from the minutes of this meeting in which the parties' representatives, who were in attendance, expressed their willingness to proceed with the work on the project in anticipation of an approval of the drawings by MDOT. Skyline, in challenging the

Several days later (November 15, 2006), Posen extended a revised purchase order to Skyline which incorporated the new MDOT specifications. Posen's revised purchase order directed Skyline to "[s]ubmit approval drawings ASAP" and, in so doing, stated that "[t]his order is contingent upon [MDOT's] approval of submitted drawings." Skyline, acting upon the design specifications within this revised purchase order, submitted two additional sets of drawings to MDOT. However, just as in the first submissions, both sets were rejected by MDOT despite contentions by Skyline that it had a design which was superior to the State of Michigan's specifications.

On February 2, 2007, Posen forwarded a letter to Skyline in which it demanded that final approval of its submissions be obtained by February 7, 2007. Posen also advised Skyline that if the February 7th deadline was not met, it would consider its contractual relationship to be "null and void."[5] Under these circumstances, on February 5, 2007 Skyline requested a "face-to-face meeting with all decision makers to allow [it] to explain in person why its proposed design was superior to the 'Revised Specification[s] . . . .'"[6]

On February 7th, Skyline submitted another set of drawings, along with an explanation as to why its design was preferable to the MDOT's revised specifications. Skyline adds that it "made

---

inclusion of a paragraph within the minutes which stated that "Skyline assumed all risk and responsibility associated with early production," proclaims that it did not have a contemporaneous opportunity to review the accuracy of these minutes.

[5]In this letter, Posen noted that it had been over ten months since its purchase order was issued and over three months since Skyline received MDOT's revised specifications. In the email to which this letter was attached, Posen stated that it "feels that it has been left no other choice [regarding the termination of the purchase order] given response time delays throughout this project."

[6]Skyline also claims that its representative, Paul Chytka, spoke with a Posen representative, Todd Spina, on the evening of February 5, 2007 "and confirmed that Posen's letter was not really an ultimatum to notify Skyline that Posen was on the verge of cancelling the contract, but instead was merely an effort to 'keep the submittal process moving forward.'"

it absolutely clear that [it] was capable of building . . . [DMS units] that satisfied [MDOT's] Revised Specification's . . . ."[7] When Skyline failed once again to obtain an approval of its drawings from MDOT, Posen terminated their contract.[8] According to Posen, MDOT expressed its desire to obtain bids from other subcontractors because of Skyline's repeated failure to conform to the specifications.[9]

II.

In assessing a motion for summary judgment, the Court must examine the pleadings, discovery and disclosure materials on file, and any affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ P. 56(c); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). Thus, it is the responsibility of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Hence, a summary judgment must be entered if (1) the submitted evidence in support of the dispositive motion clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *id*. at 252, or (2) the

---

[7]For reasons that have not been made clear, the suggested meeting did not occur.

[8]It appears that this may have occurred on February 7, 2007, though the exact date is not discernible from the record and is not relevant to the decision by the Court on this motion.

[9]Skyline maintains that a subsequent drawing submission by another contractor was accepted by MDOT in July 2007 included a standard which its "second submittal would have satisfied."

opponent fails to present evidence that is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Upon such a showing, the non-moving party must act affirmatively in order to avoid the entry of summary judgment. Fed. R. Civ. P. 56(e). The mere presentation of a scintilla of supporting evidence is insufficient to offset an otherwise sufficiently submitted request for dispositive relief. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 252). Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

### III.

Posen submits that there are no genuine issues of a material fact in dispute in this case and, as such, it is entitled to the entry of a summary judgment as a matter of law. It asserts that Skyline failed to satisfy a condition precedent to the formation of the contract and "cannot rely on a conditional promise to establish a cause of action for promissory estoppel"[10] which excuses it from performance under their agreement.

Skyline takes a different view point, arguing, *inter alia*, that "Posen's termination of the contract was precipitous" and "violated its obligations . . . under the [Uniform Commercial Code] and Michigan common law."

Under Michigan law, a condition precedent is defined as "a fact or event which the parties intend to exist or to take place before there is a right to performance." *Culver v. Castro*, 126 Mich. App. 824, 827 (1983). A condition precedent "creates no right or duty in and of itself, but is merely

---

[10]The Court notes that Skyline withdrew the claim for promissory estoppel in its response to Posen's summary judgment motion. Therefore, the Court declines to analyze this issue, which was briefed extensively by Posen in its request for relief.

a limiting or modifying factor." *Reed v. Citizens Ins. Co.*, 198 Mich. App. 443, 447 (1993)(overruled on other grounds).

Two years ago, the Michigan Court of Appeals addressed the application of a condition precedent in *Able Demolition v. Pontiac*, 275 Mich. App. 577 (2007). In *Able*, the plaintiff, in a written contract, agreed to perform demolition work for the defendant, a municipal government. Significantly, there was a provision in the parties' contract in which the plaintiff agreed to obtain pre-demolition authorization from the department director or his designees prior to the commencement of any work. However, the plaintiff, in an apparent disregard for the language in the contract, undertook certain demolition projects without the requisite authority to proceed. Notwithstanding, the plaintiff sought payment for its services from the defendant. When the defendant resisted its demand for payment, the plaintiff sued on the basis of the parties' written contract. The trial court granted the defendant's motion for summary disposition because the plaintiff had failed to satisfy the condition precedent which required approval from the director of the department or his designees prior to the commencement of the demolition project. On appeal, the Michigan Court of Appeals affirmed, holding that the pre-authorization provision was a condition precedent which precluded the plaintiff's right to performance under the contract. The court found that "the contractual language unambiguously sets forth the condition, clarifies its importance, and states the consequences of a failure to comply with the condition." *Id*. At 584. The law in Michigan "holds that where conditions exist in a contract, a party to the contract may not avoid liability by relying on the failure of a condition precedent where that party has caused the failure." *Chase v. Matsu Mfg*., 147 Fed. Appx. 507, 512 (6th Cir. 2005) quoting *Lee v. Desenberg*, 2 Mich. App. 365, (1966); *Ihlenfeldt v. Guastella*, 42 Mich. App. 384, (1972).

In this lawsuit, Skyline maintains that Posen's failure to arrange an in-person meeting with the key decision-makers involved with the project in February 2007 led to its inability to satisfy the condition precedent within the purchase orders. Thus, in Skyline's view, when Posen declined to heed its request for the meeting, this was an act of bad faith which had the practical effect of preventing it from performing the condition precedent. *Harbor Park Market, Inc. v. Gronda*, 277 Mich App. 126, 132 (2007).

The language on both of the purchase orders ("all labor & materials *shall be in strict accordance with the owners plans and specifications*") (emphasis added) is unambiguous. An examination of the record reveals that there is no evidence whatsoever which suggests that Posen interfered with its ability to comply with the condition precedent "by either taking some affirmative action, or by refusing to take action under the contract." *Harbor Park* at 132. Skyline was required to submit drawings which fully conformed with MDOT's specifications.

The Court concludes that, when viewing the evidence in a light that is most favorable to the opponent of this motion, there is no genuine issue of a material fact in dispute in this litigation. More specifically, the record supports the conclusion that Skyline did not comply its contractual responsibilities to Posen, including its obligations to satisfy the condition precedent provision of their agreement. Moreover, Skyline has failed to proffer any evidence which supports the thesis that its failure to fully perform was the result of some failings by Posen.

Skyline also advances the argument that Posen had an unfulfilled obligation to provide it with reasonable notice prior to the termination of a contract, as required by the Uniform Commercial Code. The Court disagrees. Inasmuch as Skyline did not meet the condition precedent, Posen was not under any duty to perform under the contract. *Culver* at 827.

7

The same conclusion applies to Skyline's argument that the Michigan Uniform Commercial Code places an obligation upon Posen to display good faith at all times. While the Court concurs with the proffered basic standard of conduct, Skyline has not put forth any facts that would lead a reasonable jury to find that Posen acted in bad faith or interfered with its ability to comply with the condition precedent.

Skyline also points to a case that it believes is "similar in all material respects" to the present controversy; namely, *Power Systems & Controls, Inc. v. Keith's Electrical Construction Co.*, 765 P.2d5 5 (Utah App. 1988). In *Power Systems*, the Utah Court of Appeals found "that it was common practice in government contracting to go through several rounds of submittals, and the [trial] court reached this conclusion even though there was an ultimate deadline on the furnishing of materials . . . ." This appellate court opined that Keith's Electrical had been "estopped from raising the [subcontractor's] nonperformance of the condition precedent to the contract as a defense to enforcement of the contract" because it had rendered Power Systems' performance of the contract impossible. Thus, the facts of *Power Systems* are clearly distinguishable the dispute between Skyline and Posen.

IV.

For all of these reasons, the Court must, and does, grant Posen's motion for summary judgment.

IT IS SO ORDERED.

Dated: March 31, 2009　　　　　　　　　　　s/Julian Abele Cook, Jr.
　　　Detroit, Michigan　　　　　　　　　　JULIAN ABELE COOK, JR.
　　　　　　　　　　　　　　　　　　　　United States District Court Judge

8

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2009.

<u>s/ Kay Doaks</u>
Case Manager
